UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 21-CR-649-EGS |
| v. | : | |
| | : | COUNT 3: 18 § U.S.C. 111(a)(1) |
| CALE DOUGLAS CLAYTON, | : | COUNT 4: 18 § U.S.C. 111(a)(1) |
| | : | |
| Defendant. | : | |

Let this be filed
Royce C. Lamberth
U. S. D. J. 3/10/23

### STATEMENT OF OFFENSE

1. The Government respectfully submits the following Statement of Offense in support of a plea of guilty by defendant Cale Douglas Clayton to Counts 3 and 4 of the Indictment in the above-captioned matter.

2. If this case were to go to trial, the government would prove the following facts beyond a reasonable doubt:

3. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

4. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

5. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November

3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

6. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

7. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

8. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $1.4 million dollars for repairs.

9. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

**Clayton's Participation in the January 6, 2021, Capitol Riot**

10. On January 6, 2021, the defendant, Cale Douglas Clayton, traveled from Drexel, Missouri to Washington, DC, to attend the rally for former President Donald Trump. After the rally, he walked to the north side of the U.S. Capitol grounds. Clayton wore a red baseball hat, a red Kansas City Chiefs sweatshirt, a khaki vest, blue jeans, and dark-colored boots.

11. At approximately 4:15 p.m., law enforcement began to clear the north side of the area known as the Upper West Terrace (UWT) of the U.S. Capitol. Clayton was present on the UWT when officers were clearing the area. Protestors began to push against the police line. At approximately 4:23 p.m. Clayton picked up a police baton that had been dropped by a law enforcement officer. While holding the police baton in his left hand, Clayton used his right hand to forcibly grab a shield held by Officer J.M. of the Arlington County Police officer (ACPD), as alleged in Count Three of the Indictment. The baton did not make contact with Officer J.M.

12. Later, at approximately 4:28 p.m., Clayton ascended the stairs toward another police line at the UWT. During this time, officers were attempting to clear rioters from the area. At approximately 4:30 p.m., police officers with the Montgomery County Police Department attempted to recover the police baton from Clayton. In response, Clayton forcibly made contact with Officer M.P. of the Montgomery County Police Department by grabbing the face shield of the officer's helmet and pushing the officer backward, as alleged in Count Four of the Indictment. The baton did not make contact with Officer M.P.

13. The defendant knowingly and voluntarily admits to all the elements of 18 U.S.C. § 111(a) as alleged in Count Three and Four of the Indictment. Specifically, defendant admits that on the dates and times alleged in Counts Three and Four of the Indictment he forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of their official duties. Specifically, the defendant admits that he made physical contact with the officers as alleged herein. The defendant further admits that he knew at that time of the assault of, resisting, opposition to, impeding of, intimidation of, or interference with the officers that the officers were engaged in the performance of their official duties or that he assaulted, resisted, opposed, impeded, intimidated, or interfered with the officer on account of their performance of their official duties.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By: /s/ Barry K. Disney
Barry K. Disney
Trial Attorney/ Detailee

## DEFENDANT'S ACKNOWLEDGMENT

I, Cale Douglas Clayton, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 2-27-23

Cale Douglas Clayton
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 03/07/2023

/s/ Carie Allen
Carie Allen
Attorney for Defendant